# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND JOHNSON, | ) |
| Plaintiff, | ) Civil Action No. 16-1351 |
| v. | ) Judge Cathy Bissoon |
| GLASSPORT BOROUGH, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss (**Doc. 13**), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's Motion to Dismiss (**Doc. 13**) will be GRANTED.

### A. Background[1]

On May 18, 2016, Plaintiff Raymond Johnson ("Plaintiff") initiated this action by filing a Praecipe for Writ of Summons in the Court of Common Pleas of Allegheny County. Plaintiff filed an initial Complaint in state court on August 2, 2016, which he served on Defendants on August 4, 2016. Defendants timely removed this action on August 31, 2016. (See Doc. 1). Plaintiff filed the operative Amended Complaint on September 29, 2016, in response to a Motion to Dismiss filed by Defendants. (Doc. 11).

---

[1] The following background facts are taken from Plaintiff's Amended Complaint (Doc. 11). Because the case is presently before this Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the Amended Complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pled factual averments and reasonable inferences in the light most favorable to the non-moving party. Id.

1

Plaintiff's Amended Complaint alleges that, on July 13, 2015, while he was working as a member of Glassport Borough's road crew, he was in a vehicle accident. (Doc. 11 ¶¶ 7-8). According to Plaintiff, following the accident, Councilwoman Elaina Skiba ordered Glassport Police Department Chief Clifford LaFever to transport Plaintiff to Jefferson Hospital for a blood draw. (Id. at ¶¶ 9-11). Plaintiff alleges that he "questioned this, as 3 prior incidents that [he] was aware of, no one was ever taken for testing." (Id. at ¶ 12). However, Chief LeFever told Plaintiff that, "after discussing the matter with Councilwoman Skiba," he believed he had "no choice" but to take Plaintiff to Jefferson Hospital for a blood draw. (Id. at ¶ 13). Plaintiff alleges that Jefferson Hospital refused to perform a blood test, and that Councilwoman Skiba thereafter directed Police Chief LaFever to take Plaintiff to MedExpress in Pleasant Hills, where urine and breathalyzer tests were performed. (Id. at ¶¶ 14-16). Plaintiff alleges that, the day after the tests were performed, he asked Councilwoman Skiba "why he was forced to go for a test" and she responded that "this is a random test" and that he was "lucky [he] passed the drug test." (Id. at ¶¶ 17-20). Plaintiff alleges that the results of the drug test were shared with Police Chief LaFever. (Id. at ¶ 38). Plaintiff further alleges that, at some point thereafter, he was subjected to retaliatory acts, "such as being refused vacation time." (Id. at ¶¶ 24, 60).

In the Amended Complaint, Plaintiff alleges that he is a member of the Teamsters Local Union No. 205 (the "Union"). (Id. at ¶ 41). At the time of the alleged drug test, the collective bargaining agreement ("CBA") between Glassport and the Union had expired. (Id. at ¶ 42). However, as Plaintiff alleges, while Glassport and the Union were negotiating a new contract, they were operated under the "status quo." (Id. at ¶ 43). The applicable CBA contains a "Drug and Alcohol Testing Policy," which provides, in relevant part:

> The Borough of Glassport believes that a drug and alcohol free workplace is essential to the welfare of its employees and the general public. It is the policy of

the Borough of Glassport to test for drug and alcohol abuse when there is
probable cause to believe that an employee is involved with or under the influence
of drugs or alcohol in the workplace. In addition, each employee may be subject
to up to two (2) mandatory drug and alcohol tests administered on a random basis
each calendar year. Testing by the state for CDL licensure or by the Borough for
cause shall count toward an individual's mandatory drug testing obligation for the
remainder of the calendar year.

…

All test results will be strictly confidential. Results will be reported to the
President of Council. Test results will not be discussed with any borough
employee.

(Defendants' Motion to Dismiss (Doc. 13), Exhibit B, at p. 16).[2]

Plaintiff alleges that, three days after the accident, on July 16, 2015, he filed a grievance with Glassport pursuant to the terms of the CBA. (Doc. 11 ¶¶ 22, 47; see also Doc. 13, Exhibit C). Plaintiff claims that, on September 5, 2015, he "was informed that the mediator would not take action against the Borough until such time as the Borough establishes a policy in relation to this matter." (Doc. 11 ¶ 48). Plaintiff further avers that he "made future attempts to resolve the matter through the Union on at least December 23, 2015 and January 7, 2016, to no avail." (Doc. 11 ¶ 49). Finally, Plaintiff claims, that, "[s]ubsequent to the testing, and following the filing of a grievance on July 16, 2015, on September 5, 2015, a letter from Borough of Glassport's Solicitor, Gary Matta was sent to the Attorney for Teamsters Local 205, Anthony DeLuca, indicating that The Borough of Glassport was not going to take any action regarding the accident against Raymond Johnson. The letter further indicates that no Borough employee will

---

[2] Although a Court's review on a motion to dismiss is typically limited to the allegations in the complaint, exhibits attached to the complaint and matters in the public record, the Court may consider the CBA since the contract is integral to Plaintiff's claims and he does not dispute its authenticity. See Pension Benefit Guar. Corp., 998 F.2d 1192, 1196 (3d Cir. 1993) (stating that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.").

be taken for blood testing following an accident "until such time as the Borough establishes a policy in relation to this matter." (Id. at ¶ 20).

Plaintiff's Amended Complaint sets forth five causes of action against Defendants: (1) Count I - Violation of 42 U.S.C. § 1983 for Invasion of Privacy, Intrusion of Solitude, and Unreasonable Search and Seizure against all Defendants; (2) Count II - Negligence against all Defendants; (3) Count III - Breach of Contract against Glassport; (4) Count IV - Conspiracy against all Defendants; and (5) Count V - Retaliation against all Defendants. (Id. at ¶¶ 25-62). Defendants have moved to dismiss all counts in the Amended Complaint. (Doc. 13). For the reasons that follow, the Court will grant Defendants' Motion to Dismiss.

**B. Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

In analyzing this Motion, the Court may consider documents attached to the Amended Complaint, as well as documents not physically attached thereto "if they are referred to in plaintiff's complaint and are central to the claim." Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co, 768 F.3d 284, 290-91 (3d Cir. 2014). The Court also may consider matters of public record. Burkhart v. Knepper, 310 F. Supp. 2d 734, 741-42 (W.D. Pa. 2004).

**C. Discussion**

    1. <u>Count I — Fourth Amendment Invasion of Privacy, Intrusion of Solitude, and Unreasonable Search and Seizure</u>

In Count I of the Amended Complaint, Plaintiff alleges that Defendants violated his rights under the Fourth Amendment of the U.S. Constitution—specifically, his right against unreasonable searches and seizures, his right to privacy, and his right to solitude—by requiring him to undergo urine and breathalyzer tests following the traffic accident on July 13, 2015. (<u>See</u> Doc. 11 ¶¶ 25-34). Defendants argue that Count I should be dismissed because Plaintiff has not alleged that Glassport has a policy, practice or custom that resulted in the violation of his constitutional rights. Furthermore, Defendants argue that Plaintiff's Fourth Amendment claim is without merit, as Plaintiff is bound by his Union's express consent in the CBA to both random drug tests and drug tests based upon probable cause. The Court agrees, and will dismiss this claim.

First, the Court finds that the Amended Complaint fails to allege a viable <u>Monell</u> claim against Defendant Glassport because there are no allegations that a policy, practice, or custom of Glassport resulted in the alleged violation of Plaintiff's constitutional rights. <u>See</u> <u>McTernan v. City of York</u>, 564 F.3d 636, 658 (3d Cir. 2009) (citing <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 690 (1978)). Rather, Plaintiff merely alleges that one individual— Councilwoman Skiba—required Plaintiff to undergo a drug test. Plaintiff does not allege that Councilwoman Skiba has "final policy making authority" such that her single act constitutes "official policy" sufficient to establishing liability under <u>Monell</u>. <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing . . . municipal policy, which policy can be attributed to a municipal

policymaker."). Nor does Plaintiff claim that Glassport had a policy or practice of unlawfully drug testing employees; to the contrary, he alleges that "Defendant Glassport had <u>no</u> policy on testing after incidents . . . ." (Doc. 11 ¶ 32) (emphasis added). In short, as Defendants argue, "Plaintiff is essentially seeking to hold Glassport liable for a single act of Councilwoman Skiba, which is insufficient to impose liability" under <u>Monell</u>.[3] (Doc. 14 at 7). <u>Monell</u>, 436 U.S. at 691 (explaining that a municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior).

Furthermore, even assuming that Glassport had a policy, practice or custom of drug testing employees like Plaintiff, such a policy would not violate Plaintiff's Fourth Amendment rights. The Court of Appeals for the Third Circuit has held that "a public employee union acting as exclusive bargaining agent may consent to drug testing on behalf of the employees it represents" and that "individual employees are bound by such express consent." <u>Bolden v. Se. Pennsylvania Transp. Auth.</u>, 953 F.2d 807, 828 (3d Cir. 1991). Accordingly, the Third Circuit explains that "even where a drug testing policy has been held to be constitutionally infirm, a public employee may not pursue a civil rights suit based upon that infirmity where his union and his employer agree to operate under that policy." <u>Dykes v. Se. Pennsylvania Transp. Auth.</u>, 68 F.3d 1564, 1570 (3d Cir. 1995).

---

[3] Plaintiff argues that, even if the Court finds no <u>Monell</u> liability, Glassport is still liable for the acts of its employees, as "municipalities are [] responsible for indemnifying its employees when the employee acts within the scope of his/her employment, even if otherwise immune themselves," pursuant to 42 Pa.C.S. § 8548(a). (Doc. 16 at 4). However, courts have previously explained that The Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 *et seq.* "is not meant to provide a cause of action for a plaintiff in an underlying action." <u>Johnson v. City of Erie, Pa.</u>, 834 F. Supp. 873 (W.D. Pa. 1993). Rather, "[a]s the Pennsylvania Supreme Court observed, the purpose of the statute 'is to permit local agency employees to perform their official duties without fear of personal liability, whether pursuant to state or federal law, so long as the conduct is performed during the course of their employment.'" Id. (citing <u>Wiehagen v. Borough of North Braddock</u>, 527 Pa. 517, 594 A.2d 303, 306 (1991)).

Here, as noted, the CBA that governed Plaintiff's employment at the time of the accident contained a drug and alcohol testing policy that expressly allowed Glassport to test employees for the presence of drugs or alcohol either based upon probable cause or "on a random basis." (Doc. 11 ¶ 44; see also Doc. 13, at Exhibit B). As Plaintiff alleges, he was indisputably drug tested after his involvement in an accident at work; thus, Defendants had probable cause to subject him to drug and alcohol testing. (Doc. 11 ¶ 8). However, even in the absence of probable cause, the drug tests here would have been permissible under the CBA, which permits drug testing "on a random basis." Indeed, Plaintiff alleges that Councilwoman Skiba told him that it was a "random test." (Doc. 11 ¶ 18). For these reasons, the drug tests performed on Plaintiff on July 13, 2015 did not constitute a violation of his Fourth Amendment rights, and thus the Court will dismiss Count I of the Amended Complaint.[4]

2. Count II – Negligence

Count II of Plaintiff's Amended Complaint sets forth a claim of negligence against the Defendants. Defendants argue that such claims are barred by the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"). The Court agrees. Pursuant to the PPSTCA, a local agency may only be sued on a theory of negligence if the local agency caused an injury due to actions that fall within one of the following eight exceptions: 1) vehicle liability; 2) care, custody, or control of personal property; 3) real property; 4) trees, traffic controls and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; and 8) care, custody, or control of animals. See 42 Pa. C.S. 8542 (b)(1)-(8). Employees of local agencies are entitled to the same immunity from suit as the local agency for actions taken within the scope of their employment.

---

[4] To the extent that Plaintiff claims that Defendants violated the CBA by drug testing him, that "is not a question of law under the Fourth Amendment, but is instead a question of fact to be resolved during the course of the grievance/arbitration process," because it "involv[es] interpretation of the CBA." Dykes, 68 F.3d at 1565, 1570.

7

Id. § 8545. In his Amended Complaint, Plaintiff claims that Defendants acted negligently "by not reporting results [of Plaintiff's drug test] to the President of Council, but rather by allowing the results to be given to Chief LeFever." (Doc. 11 ¶ 38). Because this claim does not fit within any of the above enumerated exceptions, it is barred under the PPSTCA. For this reason, Plaintiff's negligence claim will be dismissed.

    3. Count III – Breach of Contract

In Count III of his Amended Complaint, Plaintiff asserts a breach of contract claim against Glassport based on alleged violations of the CBA. (Doc. 11 ¶¶ 40-49). As Defendants argue, an individual employee lacks standing to enforce the terms of a collective bargaining agreement. Only the Union, as a signatory to the agreement with the employer, may bring suit under the CBA. Ziccardi v. Commonwealth of Pa., 500 Pa. 326, 456 A.2d 979, 981 (1982) (citing Falsetti v. Local Union No. 2026, United Mine Workers, 400 Pa. 145, 161 A.2d 882 (1960). Furthermore, it is well established that "[a]bsent a showing of active participation by the employer in the union's bad faith, or conspiracy or collusion between the employer and the union, the merits of the employee's claim for breach of the labor contract must be determined by arbitration, and not by a court; indeed, the court 'lacks authority to resolve the underlying grievance.' The employee may obtain relief against the employer for violation of the labor contract, but only through arbitration of a grievance under the contract's grievance procedures." Garzella v. Borough of Dunmore, 62 A.3d 486, 494 (Pa.Cmwlth.), appeal denied, 621 Pa. 660, 72 A.3d 605 (Pa. 2013) (citations omitted). Accordingly, Plaintiff's contract claim based on alleged violations of the CBA will be dismissed.

    4. Count IV – Conspiracy

In Count IV, Plaintiff alleges that the "Defendants Thomas W. Bradley and Elaina Skiba

conspired against the Plaintiff," presumably in an effort to violate his civil rights. (See Doc. 11 ¶ 51). As discussed in Sections 1 above and 5 below, Plaintiff has failed to allege a constitutional violation, and thus his conspiracy claim based on these alleged violations will be dismissed. See Samuel v. Clark, 1996 WL 448229, at *4 (E.D. Pa. Aug. 7, 1996) (dismissing conspiracy claim where underlying claims for fraud and discrimination were dismissed). However, even if Plaintiff had alleged a constitutional violation, he could not make out a viable civil conspiracy claim based on the alleged conspiracy between two Glassport Councilmembers—Councilwoman Skiba and Councilman Bradley—as it is well established that officials of a municipality, acting in their official capacities, "are part of the same entity and therefore cannot be charged with civil conspiracy because an entity cannot conspire with itself." Brady v. Cheltenham Two, 1998 U.S. Dist. LEXIS 4519, at * 13 n.6, Civ. A. No. 97-4655 (E.D. Pa. April 9, 1998); see also Gregory v. Chehi, 843 F.2d 111, 118 n.4 (3d Cir. 1988). Finally, the Court notes that Plaintiff has alleged no facts relating to Councilman Bradley, let alone facts establishing that he "conspired" with Councilwoman Skiba to violate Plaintiff's constitutional rights. Accordingly, Count IV of the Amended Complaint will be dismissed,

     5.     Count V – Retaliation

Finally, in Count V, Plaintiff asserts a retaliation claim against the Defendants. (See Doc. 11 ¶¶ 56-62). Plaintiff identifies two "protected activities" that allegedly gave rise to Defendants' retaliatory actions. First, in the Amended Complaint, Plaintiff contends that "he has been retaliated against, as 2 members of Counsel have already informed him that his employment is in jeopardy *as a result of the filing of the within action*." (Doc. 11 ¶ 57) (emphasis added). Second, in his brief in response to Defendants' motion to dismiss, Plaintiff claims that he "engaged in protected conduct *by filing a grievance with the Union with regard to*

*Defendants decision to drug test him.*" (Doc. 16 at 8) (emphasis added). Under both theories, Plaintiff appears to be raising a claim for retaliation under the First Amendment of the U.S. Constitution. However, under both theories, Plaintiff's claim fails.

First, in order to sustain a claim for First Amendment retaliation, there must be some purported retaliatory action that would be "sufficient to deter a person of ordinary firmness from exercising his or her rights." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). As numerous courts have held, "[m]ere threats . . . do not rise to the level of an adverse employment action" because, in the absence of constructive discharge, they do not result in materially adverse consequences or objective, tangible harm. Leitch v. MVM, Inc., 2004 WL 1638132, at *9 (E.D. Pa. July 22, 2004); Panton v. Boom, 2007 WL 853848, at *2 (M.D. Pa. Mar. 20, 2007) ("Significantly, allegations of verbal harassment are insufficient to state a constitutional violation. The use of words, however violent, generally cannot constitute conduct actionable under § 1983."); Reynolds v. Dep't of Army, 2010 WL 2674045, at * 12 (D.N.J. June 30, 2010) aff'd, 439 F. App'x 150 (3d Cir. 2011) ("[O]ther than general assertions by [the employee] that [the employer] told him that [he would lose his employment status and suffer a pay decrease], there is no support . . . for a finding that [the employee's] pay was ever actually reduced or that he received a downgrade in status."). Thus, Plaintiff's allegations that "2 members of Counsel have already informed him that his employment is in jeopardy" and that "Defendant Skiba told Plaintiff that he was 'lucky' to have passed the test," (Doc. 11 ¶ 59) do not give rise to a valid claim for retaliation.

More importantly, Plaintiff does not show that his filing the July 16, 2015 grievance and/or this lawsuit constituted protected activity under the First Amendment. The Supreme Court has held that, in order to make out a valid claim of retaliation under the First Amendment,

10

a public employee must show that his or her grievance and/or lawsuit relates to a matter of public concern. Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 399 (2011); see also Morgan v. Covington Twp., 563 F. App'x 896, 900 (3d Cir. 2014) ("In Guarnieri, the Supreme Court rejected our precedents holding that a public employee who has filed a lawsuit or formal complaint is protected from retaliation under the Petition Clause even if the suit or complaint addressed only private concerns."). Here, Plaintiff's grievance and lawsuit—which relate to his being drug tested one time following an on-duty vehicle accident—do not, on their face, implicate a matter of public concern. Furthermore, to the extent Plaintiff claims that he was retaliated against for filing this lawsuit, his claim fails as a matter of law, as it is well established that "actions taken by Defendants after [a plaintiff] filed his complaints do not qualify as retaliatory actions." Slavoski v. Pawlowski, 462 F. App'x 215, 218 (3d Cir. 2012) (citing Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir. 2004)).

For these reasons, Plaintiff's retaliation claim will be dismissed.

## II. ORDER

No amendment to this already Amended Complaint, short of asserting an entirely new fact pattern, could render the claims in this case viable and, therefore, any amendment of the Amended Complaint to overcome Defendants' motion would be futile. As such, Defendants' Motion to Dismiss (**Doc. 13**) is GRANTED, and the Amended Complaint will be dismissed in its entirety with prejudice. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

IT IS SO ORDERED.

March 30, 2017                                             s/Cathy Bissoon
                                                          Cathy Bissoon
                                                          United States District Judge

CC (via ECF email notification):

All Counsel of Record